IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE CHARTER SCHOOL FUND, LLC,
AND 18 WINTERGREEN DESOTO
K-8 SCHOOL, LLC,

     Plaintiffs,

v.                                                      No. 3:19-cv-1053-M-BT

THE CITY OF DESOTO, TEXAS, et al.,

     Defendants.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

     Before the Court is a "Motion for Summary Judgment on Issues of Plaintiffs' Standing," (ECF No. 41) filed by Defendant the City of DeSoto, Texas, (the "City") and Defendants Crystal Owens, Russell Hooper, Keith Stone, Rodney Beecham, Theo Peugh, Preston Gilstrap, Coffey Caesar, Curtistene McCowan, Kay Brown-Patrick, Nicole Raphiel, Rachel Proctor, Dick North, Candice Quarles, and Kenzie Moore, III (collectively, the "Individual Defendants"). For the following reasons, the Court recommends Defendants' motion be GRANTED in part and DENIED in part.

**Background**

     Plaintiff The Charter School Fund, LLC (Charter School), wholly owned by Jason Kotter and Ryan VanAlfen, is part of a family of companies specializing in the development of charter-school campuses. Pls.' App.5 (ECF No. 46). In 2011,

Charter School began working with International Leadership Texas (ILT), a Texas charter school district with campuses statewide, and by 2015, ILT had purchased three campuses from Charter School-owned entities. *Id*. 7. In the fall of 2016, ILT expressed interest in developing a K-8 campus in DeSoto, Texas, and Charter School identified 45.623 acres located at the southeast corner of E. Wintergreen Road and Cockrell Hill Road (the "Property") as an ideal location. *Id*. 5, 7, 15. In preparation for the new school, Charter School formed RJ Desoto K8, LLC on November 20, 2016, for the purpose of taking ownership of and developing the Property—RJ Desoto changed its name to 18 Wintergreen DeSoto K-8 School, LLC (Wintergreen) on June 30, 2017. *Id*. 5. And on March 28, 2017, Charter School entered into a Real Property Purchase and Sale Agreement (2017 Purchase Agreement) with Michael P. Haggerty, Independent Executor of the Estate of Bert Fields, Jr., for purchase of the Property. *Id*. 15-27; Defs.' App. 4-16 (ECF No. 43).

The 2017 Purchase Agreement permitted Charter School to terminate the agreement if it could not obtain the required zoning, platting, permitting, or other development approvals from the City by the closing date. Pls.' App. 16; Defs.' App. 5. The 2017 Purchase Agreement also contained a "buyer's review period," giving Charter School 120 days, beginning on the agreement's effective date, to terminate the agreement and receive a refund of its deposit for any reason by giving written notice to the seller and escrow agent—the agreement also provided for extensions of the review period. Pls.' App 17; Defs.' App. 6. Charter School and Mr. Haggerty executed 13 amendments to the 2017 Purchase Agreement to extend the closing

date. Defs.' App. 17-37. The Thirteenth Amendment to the 2017 Purchase Agreement extended the closing date to "the earlier of: (i) March 15, 2019, or (ii) five (5) days following the date the Buyer obtains the City Approvals." *Id.* 36. But the closing did not occur by March 15, 2019, and the agreement terminated per the 2017 Purchase Agreement's terms. *Id.* 8 ("If the Closing has not occurred on or before the Closing Date, as the same may be extended as set forth in Section 9.1, this Agreement this Agreement [sic] shall terminate.").

Between March 28, 2017, and March 15, 2019, Charter School worked with the City and its development staff on the necessary steps to obtain the required permits to develop the school. Pls.' App. 8. At an initial meeting, City staff advised Charter School "of the necessary development permits that would be required for the campus to receive City approval"; the permits included: a subdivision plat, a site plan, and a traffic-impact analysis. *Id.* Subsequently, Charter School engaged Parkway C&A, LP; Big Red Dog Engineering; O'Neal Surveying; and Alpha Testing, Inc. to prepare the permits. *Id.* Charter School paid the City's $28,773.28 site-plan application fee, and Parkway submitted the application. *Id.* From December 2016 through September 26, 2017, Charter School paid predevelopment costs of "at least" $584,577.78. *Id.* But on September 27, 2017, Wintergreen assumed financial responsibility for the school's predevelopment costs,[1] and from that date through March 19, 2019, Wintergreen incurred $235,986.11 in costs. *Id.*

---

[1] Though Wintergreen has no operating income, it obtained an intercompany note from Charter School to finance these costs; the note requires Wintergreen to repay

From late 2017 through March 2019, Charter School revised the traffic-impact analysis seven times at the direction of Crystal Owens, the City's Managing Director of Development Services, but the City rejected all of them. *Id.* 9; Defs.' Br. 6 (ECF No. 42). Defendants also denied Charter School's site-plan proposals six times—Owens denied three; the City's Zoning and Planning Commission denied two; and the City Council upheld the denial of the last version on March 19, 2019. Pls.' App. 9-10. Each of those denials was based on the traffic-impact analysis. *Id.* 10. Plaintiffs plead that Defendants' "overly technical critiques," "ad-hoc directives," and "consistent elimination of potential mitigating improvements . . . was the byproduct of a coordinated and intentional effort . . . to hamstring [Plaintiffs'] good-faith attempts to mitigate traffic so as to provide a colorable basis for [Defendants] to deny the Site Plan and prevent the development of the School." 3d Am. Compl. 8 (ECF No. 32). At a November 8, 2017 meeting to discuss the traffic-impact analysis, Plaintiffs allege that "Owens requested (for the second time) the demographic profile of other . . . schools [developed by Charter School and its affiliates] in the area." *Id.* 9. "Ms. Hlavinka expressed concerns that the School would erode the 'feel' of the community," and nonengineer "Mr. Tom Johnson . . . indicated that even though the City has not adopted any technical development standards specifically related to traffic, he objects to the [traffic-impact analysis] because it did not utilize 'common sense.'" *Id.* Despite the City's

---

Charter School upon closing on the Property and funding of the school's construction loan. Pls.' App. 9.

final denial, on July 1, 2019, Charter School and Mr. Haggerty entered into a new Real Property Purchase and Sale Agreement (2019 Purchase Agreement) for the sale of the Property. Pls.' App. 57-68; Defs.' App. 38-49. Charter School then assigned all of its "rights and obligations under [the 2019 Purchase Agreement] and associated escrow" to Wintergreen, and Wintergreen closed on the Property on July 23, 2019. Pls.' App. 69-77; Defs.' App. 50-58.

But before Charter School entered into the 2019 Purchase Agreement, on March 22, 2019, it filed this lawsuit in the 44th District Court of Dallas County, Texas, which Defendants subsequently removed. Removal Notice 2 (ECF No. 1). Charter School later sought leave to add Wintergreen, and the Court granted it. *See* Mot. Join (ECF No. 16); Order (ECF No. 19) (granting motion for joinder). By their Third Amended Complaint, Plaintiffs seek a declaratory judgment against Defendants and assert claims against: the Individual Defendants in their official capacities for "ultra vires acts"; the Individual Defendants in their personal capacities for deprivation of civil rights; and the City for a regulatory taking. *See* 3d Am. Compl. Defendants now move for summary judgment on the issue of standing and contend that Plaintiffs do not have standing to bring their claims because "[i]n a nutshell, . . . neither of the Plaintiffs owned, or were parties to any agreement to purchase the property in question on March 19, 2019, . . . the date that the DeSoto City Council voted to uphold the denial of Charter School's Site Plan." Defs.' Br. 9. Defendants' motion is fully briefed and ripe for determination. Pls.' Resp. (ECF No. 44); Defs.' Reply (ECF No. 47).

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citations omitted). The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-

6

judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

### Analysis

Defendants' motion for summary judgment is limited to the issue of Plaintiffs' standing. Therefore, the Court only analyzes whether each Plaintiff has standing to bring the claims asserted in their Third Amended Complaint. 3d Am. Compl.

"Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (Scalia, J.); *see also Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (Breyer, J.). The United States Supreme Court has interpreted "cases" and "controversies" to mean those types of disputes traditionally resolved by the judicial process. *Muskrat v. United States*, 219 U.S. 346, 357 (1911). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co.*, 523 U.S. at 102 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The "irreducible constitutional minimum of standing" includes three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted). Second, the injury must be causally connected to the complained-of conduct; in other words, it must be "fairly . . . trace[able] to the challenged action of the

7

defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

"Prudential standing" is a separate doctrine, not derived from Article III, that may prevent a court from adjudicating a dispute even if it has met the constitutional standing requirements; however, the Supreme Court expressed that this doctrine "is in some tension with [its] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014) (Scalia, J.) (internal quotation marks omitted) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)). Defendants, however, only argue that Plaintiffs lack constitutional standing.

Article III standing is a jurisdictional requirement, and consequently, its absence may be raised by a party even late in litigation." *Davis v. Tarrant Cnty.*, 565 F.3d 214, 220 (5th Cir. 2009) (citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) ("A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."

(quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996))). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."[2] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted).

Thus, the elements of standing "are not merely pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561; *accord El Paso Cnty. v. Trump*, 982 F.3d 332, 337-38 (5th Cir. 2020). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but in "response to a summary judgment motion, . . . the plaintiff . . . must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true." *Id.* (citations omitted); *see also El Paso Cnty.*, 982 F.3d at 338 ("As the party seeking to invoke federal jurisdiction, the plaintiffs bear the burden of establishing standing for each claim they assert, and because there is a final summary judgment

---

[2] Though Defendants removed this case from state court on the basis of federal-question jurisdiction because Plaintiffs assert claims under 42 U.S.C. § 1983, Removal Notice 2-3, Plaintiffs never sought remand and now contend that they have standing to bring their claims in federal court. Pls.' Resp. Br. 11, 21 (ECF No. 45).

and a permanent injunction in this case, the plaintiffs must have adduced evidence to support controverted factual allegations." (citations omitted)). Ultimately, on summary judgment, "the plaintiffs' burden on standing is only to raise an issue of material fact." *Croft v. Governor of Texas*, 562 F.3d 735, 746 (5th Cir. 2009). "[A] plaintiff must demonstrate standing for each claim [s]he seeks to press and have standing separately for each form of relief sought." *Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 695 (5th Cir. 2019) (internal quotation marks omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (Roberts, C.J.)). In other words, "[t]he court must evaluate each plaintiff's Article III standing for each claim; 'standing is not dispensed in gross.'" *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) (quoting *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996) (Scalia, J.)). The Court first considers whether Charter School has standing to bring the claims asserted in its Third Amended Complaint before addressing Wintergreen's standing.

### A. Charter School

#### i.

Defendants argue Charter School "cannot establish that it suffered or imminently will suffer an injury in fact" because the "undisputed summary judgment evidence establishes that Charter School did not own the Property, nor was it even a party to a valid contract to purchase the Property when the alleged injurious action occurred." Defs.' Br. 18. Plaintiffs respond that Charter School has established a cognizable injury because Defendants' actions threaten to waste

Charter School's investment in the potential development and Defendants' denials of Charter School's site plans injured Charter School on multiple occasions while the 2017 Purchase Agreement was in effect. Pls.' Resp. Br. 11-15. The Court finds Plaintiffs have raised a fact issue as to whether Charter School suffered an injury-in-fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing *Black's Law Dictionary* 479 (9th ed. 2009)). An injury need not be economic. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977) (citations omitted). But the Supreme Court has found a developer to have suffered economic injury sufficient to confer constitutional standing when its rezoning petition was denied, risking wasting its investment in the project, even though it did not own the property and its sale agreement was contingent upon securing zoning clearance. *Id.* at 262-63.

In *Village of Arlington Heights*, a religious order owned vacant property and agreed to work with the Metropolitan Housing Development Corporation (MHDC) to build low- and moderate-income housing. *Id.* at 255-56. MHDC and the order entered into a 99-year lease and an accompanying agreement of sale covering the property. *Id.* at 256. While MHDC "became the lessee immediately, . . . the sale agreement was contingent upon MHDC's securing zoning clearances from the

Village and § 236 housing assistance from the Federal Government." *Id*. MHDC filed its petition for rezoning and supporting materials with the Village of Arlington Heights Plan Commission, but the Village denied the request. *Id*. at 257-58. Even though MHDC did not own the property and owed the order nothing if the Village denied rezoning, the Supreme Court held MHDC met constitutional standing's injury requirement because MHDC suffered an economic injury by "expend[ing] thousands of dollars on the plans for [its project] and on the studies submitted to the Village in support of the petition for rezoning," which would be "worthless" unless rezoning were granted. *Id*. at 262.

Similarly, another court in this district found that a developer without a valid lease sufficiently alleged an injury when the City of Dallas's moratorium on development prevented it from moving forward with its plans after the developer had spent "hundreds of thousands of dollars" on the development. *Mercado Azteca, L.L.C. v. City of Dallas*, 2004 WL 2058791, at *1-4 (N.D. Tex. Sept. 14, 2004). In that case, Mercado Azteca, a Texas LLC that develops shopping malls, reached an agreement with Center Funding, Inc. to lease part of the Bronco Bowl facility, but the letter agreement provided that it created no contractual liability. *Id*. at *1. Azteca "later signed a commercial lease for the Bronco Bowl space, which Center Funding did not sign," but, relying on Center Funding's alleged representations, Azteca began spending "significant sums of money in planning and developing the Bronco Bowl facilities." *Id*. Then on March 26, 2003, the City of Dallas enacted a moratorium on development on Fort Worth Avenue to conduct

12

a land-use study, allegedly after the Fort Worth Avenue Development Group circulated defamatory statements about Azteca and met privately with Dallas city-council members and the mayor of Dallas to halt development. *Id.* at \*1-\*2. Azteca filed suit maintaining the City instituted the moratorium for the discriminatory purpose of preventing the development of a Hispanic-owned business. *Id.* at \*2. The City argued that Azteca failed to meet standing's first prong because its injury was "speculative and conjectural inasmuch as Azteca did not have a binding agreement to lease the Bronco Bowl site, and even if it did, that agreement was subject to numerous contingencies." *Id.* at \*4. The court, however, relied on *Village of Arlington Heights* and found Azteca sufficiently alleged an injury because it "allege[d] to have spent hundreds of thousands of dollars towards the development of the Bronco Bowl in furtherance of a business opportunity it had, and it claims that the City's actions worked to interfere with that opportunity, thereby wasting its investment." *Id.*

Here, Defendants contend Charter School cannot demonstrate an injury-in-fact because:

> (1) Charter School has never owned the Property; (2) Charter School did not possess anything more than an option contract to purchase the Property when it executed the 2017 Purchase Agreement; (3) Charter School was not injured as a result of Defendants' alleged conduct due to the $300,000.00 reduction in the sales price between the 2017 Purchase Agreement and the 2019 Purchase Agreement; and (4) Charter School was not a party to any valid, existing agreement to purchase the Property at the time that the alleged injurious conduct occurred.

13

Defs.' Br. 20-21. But like MHDC and Mercado Azteca, which each invested a substantial amount of money into the development of its project, entered into a contingent contract (that may not have been binding) concerning that property, and did not own the property at the time of the injury, Charter School paid the City's $28,773.28 site-plan application fee on August 3, 2017, spent $584,577.58 in predevelopment costs from December 2016 through September 26, 2017, and entered into a contract for purchase of the Property, the 2017 Purchase Agreement, contingent upon obtaining the City's approval for its project, though it never owned the Property. Pls.' App. 7-8, 15-24. Accordingly, because the City's denial of Charter School's site plan prevented it from moving forward with the development, thus wasting its investment, the Court finds Plaintiffs have sufficiently raised a fact issue as to whether Charter School suffered an injury.

However, Defendants contend *Village of Arlington Heights* is inapposite because in that case the "challenged action of the petitioners [stood] as an absolute barrier to constructing the housing MHDC had contracted to place on the . . . site," whereas here "no 'absolute barrier' exists to Plaintiffs submitting a new site plan for a school with a smaller student population." Defs.' Br. 22. "The present case simply involves the denial of a site plan [for] the development of a large, 1400 student school." *Id*. Defendants also argue that *Mercado Azteca* is distinguishable for the same reason. *Id*. 23. But, the entity that would eventually purchase the campus, "ILT's financial and education model relies on a student enrollment of

1,416 student [sic]," and "ILT's interest in the Property and the School was premised on [Charter School] obtaining approval from the City for [ ] Wintergreen to build a campus with an enrollment of at least 1,416 students." Pls.' App. 8. Thus, because Plaintiffs' proposed development depends on obtaining approval for a 1,416-student school to be financially viable, the City's denial effectively functions as an absolute barrier. Accordingly, Defendants' first and second arguments fail because *Village of Arlington Heights* and *Mercado Azteca* make clear that property ownership is not a necessary requirement for, nor is a contingent contract an impediment to, alleging an injury-in-fact in this development context. *See Vill. of Arlington Heights*, 429 U.S. at 262-63; *Mercado Azteca*, 2004 WL 2058791, at *4.

Defendants' third argument, that Charter School was not injured because the Property's purchase price decreased by $300,000.00 between the 2017 and 2019 Purchase Agreements, also misses the mark. *See* Pls.' App. 15, 58. "[S]tanding analysis is not an accounting exercise." *Texas v. United States*, 809 F.3d 134, 156 (5th Cir. 2015) (quoting *NCAA v. Governor of N.J.,* 730 F.3d 208, 223 (3d Cir. 2013)). "[T]he fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing." *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 96 n.10 (2d Cir. 2017) (Calabresi, J.) (quoting *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008)); *see also Texas*, 809 F.3d at 155-56 ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the

defendant. Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury." (quoting 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.4 at 147 (3d ed. 2015))). Therefore, while Charter School may have had the opportunity to purchase the Property for less, that does not negate the injury it suffered in the form of wasted development costs by not being able to move forward with its proposed development.

In their reply, however, Defendants dispute whether Plaintiffs have established that Charter School's predevelopment costs have been wasted or "rendered worthless sufficient to establish an injury under *Arlington Heights*," because "[t]heir only evidence comes from the Declaration of Jason Kotter," who "testifies that it is 'highly unlikely,' but apparently not impossible, that Plaintiffs might ever recover their pre-development expenses." Defs.' Reply 7. "This is especially true," Defendants continue, because Plaintiffs could "investigate[ ] the possibility of developing a similar school, just with a smaller enrollment." *Id.* Moreover, Defendants contend Mr. Kotter's "testimony is not competent summary judgment evidence . . . because [it] . . . is speculative, unsubstantiated and conclusory, particularly coming from an interested witness." *Id.* But in determining whether MHDC suffered injury, the *Village of Arlington Heights* Court did not require MHDC to establish that it would be unable to ever recover its predevelopment expenses, and Defendants cite no authority supporting such a requirement. *See Vill. of Arlington Heights*, 429 U.S. at 262 ("Unless rezoning is granted, many of these plans and studies will be worthless even if MHDC finds

16

another site at an equally attractive price."); Defs.' Br.; Defs.' Reply. And, concerning Mr. Kotter's declaration, "[i]n response to a summary judgment motion," the specific facts set forth by plaintiff's "affidavit[s] or other evidence . . . for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (citation omitted); *accord McCardell v. U.S. Dep't of Hous. & Urban Dev.*, 794 F.3d 510, 518 (5th Cir. 2015) ("In reviewing standing at the summary judgment stage, any 'specific facts . . . set forth by affidavit or other evidence . . . will be taken to be true.'").

Last, Defendants' fourth argument, that Charter School was not a party to any valid, existing agreement to purchase the Property at the time of the injury, views Charter School's injury too narrowly. Charter School executed the 2017 Purchase Agreement on March 28, 2017, with the option to terminate the agreement if it were unable to obtain the City's approval. Pls.' App. 16, 24. And though Charter School never closed on the Property and the 2017 Purchase Agreement expired on its own terms on March 15, 2019, *see* Pls.' App. 10, 57; Defs.' Br. 13, the City's final denial of Charter School's site plan on March 19, 2019, was only the last in a series of denials. "Defendants collectively denied [Charter School's] proposed site plans a total of six times. Owens denied three site plans (April 10, 2018; September 5, 2018; and February 7, 2019)[;] the Commission denied two site plans (October 9, 2018; and March 6, 2019)[;] and the Council denied the last version of the site plan on March 19, 2019." Pls.' App. 9-10. Thus, although the 2017 Purchase Agreement was not in effect on the date of the City's

final denial, Charter School plausibly suffered cognizable injury at other points when the agreement was in effect. The Court finds Plaintiffs have carried their burden to raise a fact issue as to whether Charter School suffered an injury-in-fact. *See Croft*, 562 F.3d at 746 ("At this stage of litigation—summary judgment—the plaintiffs' burden on standing is only to raise an issue of material fact.").

ii.

Defendants contend "Plaintiffs do not have standing to maintain their claims because they cannot establish a causal connection between any injury they claim to have suffered and Defendants' conduct." Defs.' Br. 24. Plaintiffs respond that Charter School "has shown it was Defendants' arbitrary demands and repeated denials of its plans that caused its inability to develop the Property." Pls.' Resp. Br. 20. The Court finds Plaintiffs have raised a fact issue as to whether Charter School's injury is fairly traceable to Defendants' actions.

Constitutional standing also requires a plaintiff to establish that his or her injury is fairly traceable to the defendant's challenged conduct and "not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (cleaned up) (citation omitted). And "[w]hen the suit is one challenging the legality of government action or inaction," like Plaintiffs' lawsuit, and "the plaintiff is himself an object of the action," then "there is ordinarily little question that the action or inaction has caused him injury." *Id.* at 561-62.

Here, Charter School's injury, waste of its investment in the proposed school's development, is fairly traceable to Defendants' denial of Charter School's

proposed site plan because without the City's approval, Charter School was unable to move forward with the school's development. *See* Pls.' App. 9-10. "At the time of each of the Defendants' denials, there were no other significant impediments to the development and construction of the School," and "[a]s a result of the Defendants' repeated denial of the site plan and [traffic-impact analysis], neither [Charter School] nor [ ] Wintergreen have fully recovered their respective pre-development expenses." *Id.* 10. Defendants argue that Charter School cannot establish causation because "there is no evidence that Charter School suffered any injury by Defendants' conduct"; specifically because "no 'absolute barrier' exists to either of the Plaintiffs' aspirations to build a school on the Property," and Charter School "benefitted from the termination of the 2017 Purchase Agreement by its own terms, as [ ] Wintergreen was able to purchase the Property for $300,000.00 less under the 2019 Purchase Agreement." Defs.' Br. 25. However, the Court explained why these arguments fail in its discussion of Charter School's injury. Accordingly, the Court finds Plaintiffs have carried their burden to raise a fact issue as to whether Charter School's injury is fairly traceable to Defendants' actions.

iii.

Defendants argue "Plaintiffs cannot meet their burden to establish that a federal court decision in their favor will redress any injury they claim to have suffered." Defs.' Br. 25. Plaintiffs respond that a favorable court decision will redress Charter School's injury because the remedies they request "even if they cannot relieve every injury—will benefit [Charter School] in a tangible way through

19

compensation and reopening the possibility of developing the School." Pls.' Resp.
Br. 21. The Court finds Plaintiffs have raised a fact issue as to whether a favorable
decision from this Court would redress Charter School's injury regarding its claim
for damages but not its claims for prospective and declaratory relief.

Constitutional standing's "redressability" requirement means that "it must
be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by
a favorable decision.'" *Lujan,* 504 U.S. at 561 (citation omitted). When a plaintiff
is an object of a lawsuit challenging the legality of government action or inaction,
"there is ordinarily little question that the action or inaction has caused him injury,
and that a judgment preventing or requiring the action will redress it." *Id.* at 561-
62. But "a plaintiff must demonstrate standing separately for each form of relief
sought." *DaimlerChrysler Corp.*, 547 U.S. at 352 (citations omitted). "Requests for
injunctive and declaratory relief implicate the intersection of the redressability and
injury-in-fact requirements" since redressability "limits the relief that a plaintiff
may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer
v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Steel Co.*, 523 U.S. at 103).
"Because injunctive and declaratory relief 'cannot conceivably remedy any past
wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the
redressability requirement only by demonstrating a continuing injury or
threatened future injury." *Id.* (quoting *Steel Co.*, 523 U.S. at 103; citing *City of Los
Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). For a threatened future injury to be an
injury-in-fact it must be: "(1) potentially suffered by the plaintiff, not someone else;

(2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical." *Id.* at 720-21 (internal quotation marks omitted) (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (Thomas, J.); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) (Breyer, J.)).

Here, Plaintiffs assert: a declaratory-judgment claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, against the Individual Defendants and the City, requesting various declarations related to the City's denial of Charter School's site plans; a state-law claim for ultra vires acts against the Individual Defendants in their official capacities, seeking "mandamus relief ordering Owens to approve the Site Plan and all related building permits"; a regulatory-taking claim against the City, pursuing just compensation for the Property; and § 1983 claims against the Individual Defendants in their personal capacities, seeking damages for violation of Plaintiffs' "federal constitutional rights to due process and equal protection." 3d Am. Compl. 13-19. Charter School has raised a fact issue as to whether it suffered an injury-in-fact in the form of its wasted investment in the school's development. This injury has already occurred and is redressable by a favorable decision awarding damages. Thus, Charter School has met its burden concerning redressability for its § 1983 claims against the Individual Defendants.[3]

---

[3] In response to Charter School's original petition, the Individual Defendants filed an answer in state court asserting the defense of qualified immunity, Original Pet. 3 ¶ 9 (ECF No. 1-21), and, following their removal of the case to federal court, moved for summary judgment on the defense. Ind. Defs.' Mot. (ECF No. 10). The

Accordingly, the Court recommends the District Court DENY Defendants' motion with respect to Charter School's standing to bring § 1983 claims for its damages.

But Charter School's injury, a past wrong, is not redressable by prospective or declaratory relief, and it can show no threatened future injury because Charter School assigned its rights under the 2019 Purchase Agreement to Wintergreen, and Wintergreen purchased the Property. Pls.' App. 69-77; *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. To obtain [declaratory] relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." (internal quotation marks omitted) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003))). Having assigned its interest in the Property, now owned by Wintergreen, Charter School will not suffer any future injury. Thus, Charter School's claims for declaratory judgment, mandamus relief, and just compensation fail the redressability prong, and the Court lacks jurisdiction to adjudicate them. Accordingly, the District Court should GRANT Defendants' motion with respect to

---

Court stayed consideration of these Defendants' qualified-immunity arguments and Plaintiffs' request for limited discovery, pending determination of the standing issues. Order (ECF No. 24). The Court will permit the Individual Defendants and Plaintiffs to renew their summary-judgment motion and request for limited discovery, respectively, after the District Court considers these Findings, Conclusions, and Recommendation and any objections thereto.

Charter School's declaratory-judgment, state-law ultra vires, and regulatory-taking claims and DISMISS them without prejudice.

## B. Wintergreen

### i.

Defendants contend the "undisputed facts demonstrate that [ ] Wintergreen did not suffer any injury whatsoever" because "Wintergreen's only connection with this case is that it simply assumed all of Charter School's 'rights and obligations' under the 2019 Purchase Agreement and associated escrow, and that it is the current owner of the Property." Defs.' Br. 15-16. Plaintiffs respond that "Wintergreen has established that it suffered a cognizable injury sufficient to support its standing because (1) it invested sizeable sums to develop the School and Defendants' acts have rendered that investment worthless; and (2) the Defendants' conduct has resulted in the loss of reasonably certain profits from the lease and sale of the School." Pls.' Resp. Br. 22. The Court finds Wintergreen has met its burden concerning the injury prong.

As stated, standing requires that a plaintiff "suffer[ ] an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). And, to obtain injunctive relief, a plaintiff must be "likely to suffer future injury." *See Lyons*, 461 U.S. at 105. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse

effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). The threat of plaintiff's future injury "must be both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 102 (internal quotation marks and citations omitted); *accord Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018) (Fitzwater, J.). For a threatened future injury to be an injury-in-fact it must be: "(1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical." *Stringer,* 942 F.3d at 720-21 (citations and internal quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc.*, 136 S. Ct. at 1548. And to be concrete, an "injury must be '*de facto*'"; meaning, "it must actually exist." *Id.* (citation omitted).

Here, the evidence establishes that Charter School assigned its "rights and obligations" under the 2019 Purchase Agreement to Wintergreen on July 19, 2019, and that Wintergreen then purchased the Property on July 23, 2019. Pls.' App. 69-77. Indeed, "Wintergreen purchased the Property for the purpose and with the intention of building the School for ultimate lease and sale[,] . . . pursuant to the plans submitted to the City by [Charter School]." *Id.* 11. Additionally, from September 27, 2017, through March 19, 2019, Wintergreen "incurred approximately $235,986.11 in pre-development costs in furtherance of the School." *Id.* 8-9, 11 ("Although [ ] Wintergreen never formally submitted any development applications for the Property to the City, from at least September 17, 2017, [ ] Wintergreen was financially interested in the School and obtaining City

approval to build the School because it incurred and paid pre-development costs from that date."). Thus, Wintergreen itself invested hundreds of thousands of dollars into the project, even prior to purchasing the Property. And for the same reasons discussed above with respect to Charter School's injury, Plaintiffs have raised a fact issue as to whether Wintergreen suffered an injury-in-fact in the form of a wasted investment. Like the developers' injuries in *Village of Arlington Heights* and *Mercado Azteca*, Wintergreen's lack of an ownership or enforceable lease interest in the Property at the time it incurred those expenses is not fatal to its ability to demonstrate standing. *See Vill. of Arlington Heights*, 429 U.S. at 262 (finding MHDC had constitutional standing though it "[was] not the owner of the property in question" and "[i]ts contract of purchase [was] contingent upon securing rezoning"); *Mercado Azteca*, 2004 WL 2058791, at *4 ("Whether Azteca had a binding lease agreement is irrelevant to the question of whether it suffered a cognizable injury.").

Plaintiffs have also raised a fact issue as to whether Wintergreen is likely to suffer future injury. As the current Property owner, Wintergreen can show Defendants' decisions to deny the site plan for a 1,416-student school cause a particularized, or individualized, harm that is concrete and continuing, or sufficiently likely to occur again. *See K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) ("Still, both this court and the Supreme Court have generally permitted future events which are sufficiently likely to occur to serve as a basis for standing when the plaintiffs, as here, are seeking injunctive relief."). Defendants' denials of

Charter School's site plan impair Wintergreen's ability to move forward with the project. *See* Pls.' App. 11. Accordingly, Plaintiffs have carried their burden to raise a fact issue as to whether Wintergreen suffered an injury-in-fact. The Court therefore need not reach Plaintiffs' futility argument.

ii.

Defendants contend Plaintiffs "cannot establish a causal connection between any injury they claim to have suffered and Defendants' conduct." Defs.' Br. 24. Plaintiffs respond that Wintergreen has established causation. Pls.' Resp. Br. 25. The Court finds Plaintiffs have carried their burden concerning whether Wintergreen's injuries are fairly traceable to Defendants' actions.

As stated, "[w]hen the suit is one challenging the legality of government action or inaction," like Plaintiffs' lawsuit, and "the plaintiff is himself an object of the action," then "there is ordinarily little question that the action or inaction has caused him injury." *Lujan,* 504 U.S. at 561-62. Here, "[b]ecause of the Defendants' failure to approve a site plan, [ ] Wintergreen was (and continues to be) unable to build, lease, and ultimately sell the School, and has suffered (and continues to suffer) economic harm as a result." Pls.' App. 10, 11 ("At the time of each of the Defendants' denials, there were no other significant impediments to the development and construction of the School.").

But Defendants contend Wintergreen's future injury is self-inflicted, and therefore not fairly traceable to Defendants' conduct, because Wintergreen "voluntarily entered into an agreement to purchase the Property knowing full well

26

that the Site Plan for the 1416 student school had already been denied." Defs.' Reply 5. Indeed, "standing cannot be conferred by a self-inflicted injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (citing *ACORN v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999)). But "[a]n injury is self-inflicted so as to defeat standing only if the injury is so completely due to the plaintiff's own fault as to break the causal chain." *Kinetica Partners, LLC v. U.S. Dep't of the Interior*, --- F. Supp. 3d ----, 2020 WL 7081609, at *9 (S.D. Tex. Dec. 3, 2020) (internal quotation marks omitted) (quoting *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)). "Standing doctrine . . . does not require a plaintiff to show that it made no choice that put it at risk of injury." *Id.* (quoting *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 51 (D.D.C. 2020)). "So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *Backer ex rel. Freedman*, 788 F.3d at 344 (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000)). Here, though Wintergreen purchased the Property after Defendants denied Charter School's site plans, Plaintiffs' evidence indicates that Defendants engaged, or will engage, in conduct contributing to Wintergreen's past and future injuries because Defendants' rejection of the site plan prevents Wintergreen from moving forward with the project thus wasting its investment. Pls.' App. 11. Accordingly, because the Court finds Plaintiffs have carried their burden concerning whether Wintergreen suffered an injury-in-fact as a result of Defendants' actions, the Court also finds

Plaintiffs have raised a fact issue as to whether Wintergreen's injuries are fairly traceable to Defendants' actions.

iii.

Defendants argue "Plaintiffs do not have standing to maintain their claims because they cannot establish that a federal court decision in their favor will redress any claimed injury." Defs.' Br. 25. Plaintiffs respond that Wintergreen has established the Court is able to redress "at least some of [its] injuries." Pls.' Resp. Br. 26. The Court finds Plaintiffs have carried their burden to show that a favorable decision from this Court would redress Wintergreen's injuries.

Again, when a plaintiff is an object of a lawsuit challenging the legality of government action or inaction, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62. But plaintiffs must demonstrate standing with respect to each form of relief requested, *DaimlerChrysler Corp.*, 547 U.S. at 352 (citations omitted), and redressability "limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer*, 942 F.3d at 720 (citation omitted).

Here, because Plaintiffs have raised a fact issue as to whether Wintergreen suffered a past injury, the Court finds the damages Wintergreen seeks in connection with its § 1983 claims would redress its past injury. *See* 3d Am. Compl. 18-19. And because Plaintiffs have also carried their burden concerning whether Wintergreen will suffer future injury, the Court finds the declaratory and

28

prospective relief Wintergreen seeks with respect to its declaratory-judgment, state-law ultra vires, and regulatory-taking claims would redress its future injury. *See id.* 13-18; *Stringer*, 942 F.3d at 720 ("[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." (citing *Lyons*, 461 U.S. at 105)). Accordingly, Wintergreen's claims satisfy standing's redressability prong. The Court therefore has jurisdiction to adjudicate them and recommends the District Court DENY Defendants' motion with respect to Wintergreen's claims.

iv.

The Court does not address Plaintiffs' claim for attorneys' fees under 42 U.S.C. § 1988 at this juncture. However, because Plaintiffs' § 1983 claims survive, if successful on those claims, Plaintiffs may request attorneys' fees under § 1988. *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .").

## Recommendation

For the foregoing reasons, the District Court should GRANT the Individual Defendants and the City's "Motion for Summary Judgment on Issues of Plaintiffs' Standing," (ECF No. 41), with respect to Charter School's declaratory-judgment, state-law ultra vires, and regulatory-taking claims and DISMISS those claims

without prejudice. The District Court should DENY Defendants' motion with respect to Plaintiffs' remaining claims.

**SO RECOMMENDED.**

March 3, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).