IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CHARTER SCHOOL FUND, LLC and 18 WINTERGREEN DESOTO K-8 SCHOOL, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 3:19-cv-01053-M-BT |
| THE CITY OF DESOTO, TEXAS et al. | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Crystal Owens, Russell Hooper, Keith Stone, Rodney Beecham, Theo Peugh, Preston Gilstrap, Coffey Caesar, Curtistene McCowan, Kay Brown-Patrick, Nicole Raphiel, Rachel Proctor, Dick North, Candice Quarles, and Kenzie Moore, III's (collectively, the "Individual Defendants'") Motion for Summary Judgment (ECF No. 58). As explained in these Findings, Conclusions, and Recommendation, the Court should GRANT the Motion and DISMISS with prejudice all of Plaintiffs The Charter School Fund, LLC and 18 Wintergreen DeSoto K-8 School, LLC's claims against the Individual Defendants.

**Background**

This lawsuit arises out of the denial of a site plan (the "Site Plan") application for the development of a proposed charter school in DeSoto, Texas (the "City").

Plaintiff The Charter School Fund, LLC (Charter School) specializes in the development of charter-school campuses. Pls.' App. 5-6 (ECF No. 68). Defendant Owens is the City's Managing Director of Development Services. Defs.' Br. 7 (ECF No. 59). Defendants Hooper, Stone, Beecham, Peugh, Gilstrap, and Caesar are, or were, members of the City's Planning and Zoning Commission. *Id.* Defendants McCowan, Brown-Patrick, Raphiel, Proctor, North, Quarles, and Moore are, or were, councilmembers of the DeSoto City Council. *Id.*

In 2011, Charter School began working with International Leadership Texas (ILT), a Texas charter school district with campuses statewide, regarding the possible development of a K-8 campus with an anticipated enrollment of approximately 1,400 students in DeSoto (the "School"). Pls.' App. 7. By 2016, Charter School identified a 45-acre site at the southeast corner of East Wintergreen Road and Cockrell Hill Road in DeSoto (the "Property") as its preferred location for the School. *Id.* at 5, 7. Charter School formed RJ Desoto K8, LLC on November 20, 2016, for the purpose of taking ownership of and developing the School on the Property. *Id.* at 5. RJ Desoto later changed its name to 18 Wintergreen DeSoto K-8 School, LLC (Wintergreen). *Id.*

In December 2016, Charter School met with Defendant Owens and others on the City's staff to discuss building the School. *Id.* at 8. During these meetings, Owens and the City's staff confirmed that the Property was zoned for single-family use and that a charter school was allowed under the City's zoning ordinance (the "Zoning Ordinance"). *Id.* Between March 2017 and March 2019, Charter School

2

worked with the City and its staff to obtain the required permits to develop the School. *Id.*

At an initial meeting, City staff advised Charter School "of the necessary development permits that would be required for the campus to receive City approval." *Id.* The permits required a subdivision plat and Site Plan. *Id.* Also, the Site Plan's approval required a traffic-impact analysis. *See id.* Subsequently, Charter School engaged Parkway C&A, LP; Big Red Dog Engineering; Alpha Testing, Inc.; and O'Neal Surveying to prepare the permits. *Id.* Charter School paid the City's Site Plan application fee, and Parkway submitted the application with the subdivision plat, the Site Plan, and a traffic-impact analysis. *See id.*

From late 2017 through March 2019, Charter School revised the traffic-impact analysis seven times at Owens's direction, but the City repeatedly rejected the Site Plan application. *Id.* at 11. The Individual Defendants denied Charter School's Site Plan proposals six times—Owens denied three, the City's Zoning and Planning Commission denied two, and the City Council upheld the denial of the last version on March 19, 2019. *Id.* at 12. Each of those denials was based on the traffic-impact analysis. *Id.* Plaintiffs argue that Defendants' "overly technical critiques," "ad-hoc directives," and "consistent elimination of potential mitigating improvements . . . was the byproduct of a coordinated and intentional effort . . . to hamstring [Plaintiffs'] good-faith attempts to mitigate traffic so as to provide a colorable basis for [Defendants] to deny the Site Plan and prevent the development of the School." *Id.* at 10.

At a November 8, 2017 meeting to discuss the traffic-impact analysis, Plaintiffs allege that "Owens requested (for a second time) the demographic profile of other . . . schools [developed by Charter School and its affiliates] in the area." *Id.* at 10. According to Plaintiffs, "Hlavinka expressed concerns that the School would erode the 'feel' of the community," and nonengineer "Johnson . . . indicated that even though the City has not adopted any technical development standards specifically related to traffic, he objects to the [traffic-impact analysis] because it did not utilize 'common sense.'" *Id.* at 11.

According to Plaintiffs, the City's staff indicated that they "were opposed to the School, regardless of the zoning o[f] the Property and regardless of the outcome of any [traffic-impact analysis]." *Id.* Plaintiffs argue proof for this is that Owens never disclosed that she retained, among others, a professional engineering firm Kimley Horn & Associates to review the traffic-impact analysis. *Id.* Kimley Horn stated in its analysis that it "generally agree[d] with the analysis approach and methodology" of Plaintiffs' traffic-impact analysis and disagreed with some of the restrictions Owens placed on the Site Plan. *Id.*; *see id.* at 82-83. But Kimley Horn also provided a list of other recommendations. *Id.* at 82-83.

Plaintiffs further allege they are unable to build, lease, and sell the School because the Individual Defendants failed to approve Plaintiffs' Site Plan. *Id.* at 13. Plaintiffs aver use and development of the Property for single-family housing is not economically viable. *Id.* at 14. Therefore, Plaintiffs filed this lawsuit in the 44th District Court of Dallas County, Texas against the City and the Individual

4

Defendants (collectively, "Defendants"). Removal Notice 2 (ECF No. 1). Defendants subsequently removed the case to federal court. *Id.*

In their Third Amended Complaint, Plaintiffs seek a declaratory judgment against Defendants and assert claims against the Individual Defendants in their official capacities for "ultra vires acts," the Individual Defendants in their personal capacities for deprivation of civil rights, and the City for a regulatory taking. 3d Am. Compl. (ECF No. 32). The Individual Defendants filed a summary judgment motion asserting the defense of qualified immunity. Defs.' Mot. (ECF No. 58). Plaintiffs filed their Response, and the Individual Defendants filed their Reply. Pls.' Resp. (ECF No. 66); Defs.' Reply (ECF No. 69). Defendants' Motion is fully briefed and ripe for determination. Defs.' Br.; Pls.' Br. (ECF No. 67); Defs.' Reply.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted).

The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citations omitted). The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

**Preliminary Matters**

Through their inaction, Plaintiffs abandoned all claims against Defendant Curtistene McCowan and any possible claims against the Individual Defendants in their official capacities and for procedural due process and equal protection violations.

First, all of Plaintiffs' claims against McCowan should be dismissed because Plaintiffs failed to substitute a proper party for McCowan after learning of her death. *See* Fed. R. Civ. P. 25(a)(1). On May 11, 2021, defense counsel filed a Suggestion of Death (ECF No. 54) advising that McCowan passed away on October

6

28, 2020. Under Rule 25, this filing triggered a 90-day period in which Plaintiffs were required to move to substitute a proper party for McCowan or the claims against her must be dismissed. Fed. R. Civ. P. 25(a)(1). Plaintiffs never filed a motion under Rule 25. Accordingly, the Court must dismiss Plaintiffs' claims against McCowan.

Secondly, the Individual Defendants move for dismissal of all of Plaintiffs' claims and causes of action, including Plaintiffs' claims for violations of their procedural due process rights, substantive due process rights, and equal protection rights. And to the extent Plaintiffs assert claims against the Individual Defendants in their official capacities, Defendants move for summary judgment on those claims as well. Defs.' Br. 8 n.2. Plaintiffs failed to address Defendants' official-capacity arguments in their Response. *See generally* Pls.' Br. However, the Individual Defendants are all government officials and actions against government officials in their official capacities are, in essence, actions against the City. Therefore, the Individual Defendants are entitled to dismissal of Plaintiffs' official-capacity claims because they are redundant of Plaintiffs' claims against the City. *See Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 700 (N.D. Tex. 2019).

Furthermore, in their Response, Plaintiffs argue that they "maintain a viable due process claim." Pls.' Br. 14. However, Plaintiffs limit their arguments solely to defending their substantive due process claim. *See id.* at 14-19. Plaintiffs wholly fail to address or otherwise rebut the Individual Defendants' arguments for summary judgment on Plaintiffs' procedural due process and equal protection

claims. *Compare id.*, *with* Defs.' Br. 17-18, 21-24. Accordingly, Plaintiffs have abandoned these claims, and the Court should grant summary judgment in the Individual Defendants' favor on Plaintiffs' procedural due process and equal protection claims. *See Daniels v. Regions Bank*, 2020 WL 2114812, at *3 (N.D. Tex. May 4, 2020) (Pittman, J.) (citing *Muniz v. El Paso Marriott*, 773 F. Supp. 2d 674, 683 (W.D. Tex. 2011) ("Plaintiff has submitted no evidence to support these two claims. In addition, Plaintiff failed to address these claims in her response to Defendant's Motion. As such, the Court finds Plaintiff has waived the two claims."), *aff'd sub nom. Muniz v. Columbia Sussex Corp.*, 477 F. App'x 189 (5th Cir. 2012); *Lopez v. River Oaks Imaging & Diag. Grp., Inc.*, 542 F. Supp. 2d 653, 659 (S.D. Tex. 2008) ("The Fifth Circuit consistently holds that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court.")).

**Analysis**

As explained above, Plaintiffs' substantive due process claim is the only claim that survives against the remaining Individual Defendants. Therefore, the Court considers whether those Individual Defendants are entitled to qualified immunity from Plaintiffs' substantive due process claim.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix*

8

*v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments[] and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam). Plaintiffs bear the burden of establishing that the Individual Defendants are not entitled to qualified immunity. *See, e.g.*, *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

"[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (internal quotations and citation omitted). Here, Plaintiffs fail to establish the Individual Defendants denied Plaintiffs' their federally protected statutory or constitutional property rights because Plaintiffs lacked any such right in the approval of their Site Plan and, even if they had one, the Individual Defendants had a rational basis to deny the Site Plan.

    a. *Plaintiffs lacked a federally protected property right.*

"To prevail on a substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Da Vinci Inv., L.P. v. City of Arlington*, 747 F. App'x 223, 226 (5th Cir. 2018) (per curiam) (internal quotations and citation omitted). "To have a property interest in a benefit, a plaintiff must have a legitimate claim of entitlement to it; relevant entitlements are

9

created[,] and their dimensions are defined[,] by existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotations and citation omitted). "If the benefit may be granted or denied at the discretion of government officials, it is not an entitlement." *Id.* "Courts look for 'explicitly mandatory language,' i.e. specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow." *Id.* (internal quotations and citation omitted). Thus, "if, under the ordinances, city council members could grant or deny a development plan application in their discretion, there was no entitlement to the benefit and, therefore, no protected property right." *Id.* (internal quotations and citation omitted).

Here, Section 42 of the City's Zoning Ordinance provides that the purpose of a site plan review is to:

> ensure efficient and safe land development, harmonious use of land, compliance with appropriate design standards, safe and efficient vehicular and pedestrian circulation, parking and loading, and adequate water supply, drainage and storm water management, sanitary facilities, and other utilities and services.

Defs.' App. 11. And the City's staff is charged with reviewing site plans for:

> compliance with all applicable Ordinances and the Plan; for harmony with surrounding uses and the overall plan for development of the City of DeSoto; for the promotion of the health, safety, order, efficiency and economy of the City; and for the maintenance of property values and the general welfare.

*Id.* at 12. As part of any site plan review, the City's staff "may require other information and data for specific site plans," and "[t]his data may include but is not limited to . . . traffic analysis." *Id.* Ultimately, the City's staff has authority to

10

"approve, conditionally approve, request modifications, or deny the site plan based on evaluation of the site plan details" with respect to 13 enumerated considerations, which specifically include but are not limited to: "[t]he provision of a safe and efficient vehicular and pedestrian circulation system," and "[t]he coordination of streets so as to arrange a convenient system consistent with the Thoroughfare Plan of the City." *Id.* Thus, section 42 granted the Individual Defendants considerable discretion in conducting site plan reviews. Plaintiffs had no entitlement to the approval of their Site Plan, and therefore, no protected property right.

Furthermore, Plaintiffs do not direct the Court to any ordinance, law, or court decision that compels a different result. *See generally* Pls.' Resp.; *see generally also* Pls.' Br.; Pls.' App. Instead, Plaintiffs contend that a school, like the one contemplated by their Site Plan, is an expressly authorized use for the Property. *See* Pls.' Br. 27. According to Plaintiffs, the Site Plan complied with the Zoning Ordinance because, Kimley Horn, a consultant for the City found that the Site Plan complied with the Zoning Ordinance and generally agreed with Plaintiffs' approach and methodology. *Id.* Thus, according to Plaintiffs, the Individual Defendants' discretion was narrowly circumscribed so that they were not allowed to deny the Site Plan under the Zoning Ordinance because a property interest exists "when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Id.*; *Arbor Bend Villas Hous., L.P. v. Tarrant Cnty. Hous. Fin. Corp.*, 2005 WL 548104, at *19 (N.D. Tex. Mar.

11

9, 2005) (Means, J.) (citation omitted). Contrary to Plaintiffs' argument, however, "[a]ny significant discretion conferred upon the local agency defeats the claim of a property interest." *Id.* at *18 (citations omitted).

Relying on *Bartlett v. Cinemark*, *Corpus Christi v. Unitarian Church*, and *Ex parte Mata*, Plaintiffs argue "Texas courts have also held that, although the granting of permits is generally considered a privilege and not a right, if one meets the required criteria to obtain a permit, it may not be lawfully refused, thereby becoming a right." Pls.' Br. 16-17. While the *Ex Parte Mata* court came to such a conclusion in the context of a state agency issuing a driver's license, this approach is inapposite in the context of Section 42 of the City's Zoning Ordinance. The Texas Transportation Code uses mandatory language, while Section 42 grants the City's staff considerable discretion. *Ex parte Mata*, 925 S.W.2d 292, 295 (Tex. App.—Corpus Christi 1996, no writ); *see* Tex. Transp. Code § 521.181 ("On payment of the required fee, the department *shall issue* to each qualifying applicant a driver's license . . . .") (emphasis added); *see also Dep't of Pub. Safety v. Robertson*, 203 S.W.2d 950, 952 (Tex. App.—Eastland 1947, no writ) (noting that the department cannot arbitrarily or capriciously refuse to issue a driver's license).

Similarly, the other cases that Plaintiffs rely on are unrelated to situations where a city's staff is provided discretion like the discretion afforded by Section 42. *See Bartlett v. Cinemark USA, Inc.*, 908 S.W.2d 229, 238 (Tex. App.—Dallas 1995, no writ); *see also City of Corpus Christi v. Unitarian Church of Corpus Christi*, 436 S.W.2d 923, 927 (Tex. App.—Corpus Christi 1968, writ ref'd n.r.e.). In *Bartlett*

*v. Cinemark*, unlike in this case, the individual defendants "failed to conclusively establish they were performing discretionary functions" under the city's ordinances, so the court "conclude[d] they ha[d] not established their right to qualified immunity as a matter of law." 908 S.W.2d at 238 (defining discretion as "a function that requires personal deliberation, decision, and judgment on the part of an official"). Also, in *Corpus Christi v. Unitarian Church*, unlike in this case, the city's staff would have approved the plaintiff's site plan as long as the plaintiff dedicated 15% of its property to public use. *See* 436 S.W.2d at 927-29. In that case, the court issued a writ of mandamus to compel the city to issue a building permit it withheld without lawful reason since the city tried to take the plaintiff's property for public use without paying adequate compensation violating the State and federal constitutions. *Id*.

"[W]hen analyzing whether a plaintiff presents a legitimate claim of entitlement, a court must focus on the degree of discretion given to the decisionmaker and not on the probability of the decision's favorable outcome." *Arbor Bend Villas*, 2005 WL 548104, at *19 (internal quotations and citations omitted). "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, *the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest*." *Id*. (emphasis added) (internal quotations and citations omitted).

Here, Plaintiffs mistake one of the City's consultants that generally agreed with Plaintiffs for the City's staff and council. Plaintiffs also disregard the City's

13

Zoning Ordinance that provides the City's staff and council the ability to deny Plaintiffs' Site Plan based on enumerated factors. Under section 42, the Individual Defendants had substantial discretion to deny Plaintiffs' Site Plan and exercised that discretion. Plaintiffs fail to point to any explicitly mandatory language in the City's ordinances requiring the City or its staff to approve the Site Plan when its consultant generally agrees with an applicant, or Plaintiffs in this case. *See Da Vinci*, 747 F. App'x at 226. Accordingly, Plaintiffs lacked a federally protected property interest. *See, e.g.*, *id.*; *see also, e.g.*, *Arbor Bend Villas*, 2005 WL 548104, at *20. Because Plaintiffs lacked a protected property interest, the Individual Defendants are entitled to summary judgment on Plaintiffs' substantive due process claim because the Individual Defendants could not violate Plaintiffs' right to a property interest that Plaintiffs were not entitled to under the law.

    b. *The Individual Defendants had a rational basis to deny Plaintiffs' Site Plan application.*

Even if Plaintiffs could establish that they had a federally protected property interest in their Site Plan's approval, which was denied, they must also demonstrate that the Individual Defendants lacked a rational basis for denying approval of the Site Plan. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 250-51 (5th Cir. 2000). Plaintiffs argue the Individual Defendants acted without any rational basis in denying their Site Plan because a consultant for the City generally agreed with Plaintiffs' approach and methodology for Plaintiffs' traffic-impact analysis.

14

The Individual Defendants were not charged solely with reviewing traffic-impact analyses or narrowly circumscribed compliance with the City's Zoning Ordinance and other City ordinances. The Individual Defendants task of reviewing the Site Plan involved a myriad of other considerations including, but not limited to, ensuring the efficient and safe land development; harmonious use of land; safe and efficient vehicular and pedestrian circulation, parking and loading; adequate water supply, drainage and storm water management; sanitary facilities; other utilities and services; harmony with surrounding uses and the overall plan for development of the City; the promotion of the health, safety, order, efficiency and economy of the City; the maintenance of property values; the general welfare; the provision of a safe and efficient vehicular and pedestrian circulation system; and the coordination of streets so as to arrange a convenient system consistent with the Thoroughfare Plan of the City. *See* Defs.' App. 11-13. Therefore, the Individual Defendants were charged with considering Plaintiffs' Site Plan and their request to construct a school for 1,416 students on the Property coupled with the City's existing infrastructure. *See* Pls.' App. 8.

The Individual Defendants reviewed and denied the Site Plan based on their traffic analysis. The City's staff engaged Lee Engineering to review and provide consultation on the Site Plan's traffic impact. Defs.' App. 4. Ultimately, the Individual Defendants based their decision in part on Lee's report that the Site Plan's intersections could not operate at a specific desired level of service or better. *See id.* at 20, 26-27. The Individual Defendants denied the Site Plan pursuant to

15

section 42 because the Site Plan failed to ensure the provision of a safe and efficient vehicular and pedestrian circulation system and the coordination of the streets to arrange a convenient system consistent with the Thoroughfare Plan of the City. *Id.* at 27.

The City has a legitimate government interest in regulating traffic. *See, e.g.*, *United States v. Marcavage*, 609 F.3d 264, 287 (3d Cir. 2010) ("Traffic flow is undoubtedly a legitimate government interest."); *see also, e.g.*, *Stone v. City of Maitland*, 446 F.2d 83, 87-88 (5th Cir. 1971) (stating that "reducing traffic congestion" is a "constitutionally permissible objective"); *Enclave Arlington Assocs. Ltd. P'ship v. City of Arlington, Tex.*, 669 F. Supp. 2d 735, 746 (N.D. Tex. 2009) (McBryde, J.) ("There can be no doubt that promoting and regulating traffic safety are rationally related to a legitimate government interest sufficient to foreclose a substantive due process claim."). Thus, the City's denial of the Site Plan based upon its traffic analysis was rationally related to a legitimate government interest. Accordingly, the Individual Defendants are entitled to qualified immunity on Plaintiffs' substantive due process claims.

## Recommendation

The Court should GRANT the Individual Defendants' summary judgment motion (ECF No. 58). Plaintiffs' claims against the Individual Defendants in their official capacities are redundant of their claims against the City. Plaintiffs abandoned their procedural due process and equal protection claims and failed to move to substitute a proper party for Defendant McCowan after Defendants filed a

16

suggestion of death. Plaintiffs further failed to meet their burden to overcome the Individual Defendants' assertion of qualified immunity as to their substantive due process claims. Accordingly, the Court should DISMISS with prejudice all of Plaintiffs' claims against the Individual Defendants.

**SO RECOMMENDED**.

February 24, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).